**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 6, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

VALLEY VIEW ANGUS RANCH,
INC.; OTIS CULPEPPER,

        Plaintiffs-Appellees,

v.

DUKE ENERGY FIELD SERVICES,
LP,

        Defendant-Appellant.

No. 09-6185
(D.C. No. 5:04-CV-00191-D)
(W.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **HARTZ**, Circuit Judge, **PORFILIO** and **BRORBY**, Senior Circuit
Judges.

---

In this diversity action, Valley View Angus Ranch, Inc. and its President,

Otis Culpepper (plaintiffs), sued Duke Energy Field Services, LP (now known as

DCP Midstream, LP), to recover damages for injury caused when Duke's

oil-and-gas pipeline underlying Valley View's property leaked condensate.

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Plaintiffs' amended complaint raised claims for private and public nuisance, trespass, unjust enrichment, and punitive damages. After this court reversed and remanded the district court's grant of summary judgment in favor of Duke, *see Valley View Angus Ranch, Inc. v. Duke Energy Field Servs., Inc.*, 497 F.3d 1096 (10th Cir. 2007), Duke admitted liability for any harm to Valley View directly caused by the pipeline leak. The district court entered partial summary judgment in favor of Valley View on this issue and held a jury trial to determine the nature and extent of the plaintiffs' injuries and to assess what damages, if any, each plaintiff should recover.

During the July 2008 trial, the jury heard testimony that Duke had spent $222,124 on cleanup. The jury was also presented with evidence that it would cost $756,592 to remove the remaining pollution from the Valley View property, and plaintiffs' real estate appraiser testified that the cleanup cost far exceeded the market value of Valley View's 470-acre ranch—which he estimated to be $1,000 per acre—before the leak.

The jury found Valley View entitled to $131,500 for injury to the property and Mr. Culpepper entitled to $37,500 for his inconvenience, annoyance, and discomfort. The district court entered judgment on the jury's verdict; denied Duke's motion for judgment as a matter of law and alternative motion for remittitur or a new trial; granted plaintiffs' motion to amend judgment to award

Mr. Culpepper prejudgment interest; and entered an amended judgment. Duke filed a timely notice of appeal.

On appeal Duke contends that the district court (1) erroneously instructed the jury on the measure of damages recoverable by Valley View; (2) improperly admitted expert testimony and denied Duke's posttrial motions; and (3) incorrectly awarded prejudgment interest. Our jurisdiction arises under 28 U.S.C. § 1291. We affirm.

## I. Background

Because the parties are familiar with the procedural history and trial testimony in this case, we provide only an abbreviated summary. Mr. Culpepper discovered Duke's pipeline leak in October 2003. Duke hired an environmental contractor to dig out polluted soil and perform other remediation. Plaintiffs filed suit in February 2004. About two months later, Duke completed its excavation and backfilled the excavation site with clean soil.

Throughout this litigation, plaintiffs have maintained that Duke "failed to adequately clean up the leak," J.A., Vol. 2 at 336. Duke, on the other hand, has maintained that the plaintiffs have not "suffered either the type or extent of damages which they seek," *id.*

## II. Measure of Damages

Neither party disputes on appeal the district court's ruling that Valley View's claim was for temporary injury to its property. Nor does either party

dispute that therefore the measure of damages in this case was the reasonable cost of repairing and restoring the property to its original condition, but not to exceed the decrease in the property's fair market value caused by the injury. They also agree that if the cost of repair and restoration exceeded that decrease in value, the measure of damages amounted to that decrease. Where the parties differ in their appellate briefs is on how much property should be considered in making the decrease-in-value calculation. Duke asserts that the pipeline leak did not injure more than two of Valley View's 470 acres and that damages under Oklahoma law should be limited to the diminution in value of only the injured portion of land. Duke therefore challenges the following portion of jury Instruction Number 18: "'In determining the fair market value, you may consider the extent to which the Valley View property, or some portion of it, was harmed.'" Aplt. Opening Br. at 16 (quoting J.A., Vol. 2 at 592-93). Duke contends that the jury "misconstrued" Instruction Number 18, asserting:

> The only way the jury's verdict [for Valley View] makes any sense is if the jury read Instruction No. 18 to mean that they could consider the fair market value of the entire 470-acre tract, even if only some portion of it was harmed . . . . However, . . . this would be an erroneous measure of damages.

*Id.*

Plaintiffs counter that the leak impacted more than two acres and that Oklahoma law requires consideration of the diminution in value of Valley View's

entire 470-acre ranch.  They assert that Instruction Number 18 gave proper guidance to the jury concerning the measure of damages.

In a diversity case such as this, "the substance of a jury instruction is a matter of state law, but the grant or denial of a tendered instruction is governed by federal law."  *Blanke v. Alexander*, 152 F.3d 1224, 1232 (10th Cir. 1998). Although we review the district court's refusal to give a particular instruction for an abuse of discretion, "[w]e review de novo whether, as a whole, the district court's jury instructions correctly stated the governing law and provided the jury with an ample understanding of the issues and applicable standards."  *Martinez v. Caterpillar, Inc.*, 572 F.3d 1129, 1132 (10th Cir. 2009) (internal quotation marks omitted).  "We reverse only in those cases where we have a substantial doubt whether the jury was fairly guided in its deliberations . . . ."  *Id.* (brackets and internal quotation marks omitted).

On appeal Duke principally relies on *Houck v. Hold Oil Corp.*, 867 P.2d 451, 461 (Okla. 1993), which held that a plaintiff could recover damages for temporary injury to one portion of its land and damages for permanent injury to another portion, so long as there was no double recovery.  *Houck's* holding, argues Duke, shows that the jury need not consider the entire property in assessing damages for temporary injury.  This argument, however, does not get Duke very far.  Duke appears to believe that the only portion of the property that can be considered injured is that portion where the leak occurred—the two acres.

But *Houck* tells us otherwise. It states: "[I]f the wrongful act somehow adversely affected the entire parcel . . . , it is appropriate to compute the damages on the basis of the diminution of the value of the total acreage and *not just on the value of the portion damaged.*" *Id.* (emphasis added). Thus, if the value of portions of the property other than the two acres was diminished by the leak, that loss must be considered by the jury even if only the two acres were damaged. And because the issue is the decrease in market value of the property, Duke could not be prejudiced by the jury's consideration of too much property. If, say, 450 of the 470 acres were not adversely affected by the leak—that is, the market value of the 450 acres was not decreased—then consideration of those 450 acres would not have increased the amount of damages awarded.

Accordingly, we hold that the challenged language in Instruction Number 18 was correct. As the district court explained: "[T]he current instruction recognizes that the extent of the harm caused by the leak may be considered in determining fair market value but leaves to the jury, based on and in light of the conflicting evidence, the determination of how that harm . . . impact[s] . . . the value of the property." J.A., Vol. 6 at 2057.

We now turn to Duke's argument that the evidence, even assuming that Instruction 18 is correct, could not support the verdict.

### III.  Sufficiency of the Evidence/Expert Testimony

Duke states its second issue on appeal as "The District Court improperly denied [Duke's] post-trial motions for judgment as a matter of law and for new trial."  Aplt. Opening Br. at 18.  Included within the discussion under this heading, however, is a separate issue—the admissibility of testimony by plaintiffs' expert witness Jerry Black.  We address that issue before turning to the posttrial motions.

Duke contends that the district court should have excluded Black's testimony about his cleanup plan, which envisioned re-excavating soils underlying the initial excavation area to a depth of 19 feet.[1]  In evaluating the admissibility of expert testimony under Federal Rule of Evidence 702, a district court "must first determine whether an expert is qualified by knowledge, skill,

---

[1]     Duke also asserts in conclusory fashion that Black's "estimated cost of remediation lacked sufficient support to be submitted to the jury" because his opinions about the efficacy of a remedial pumping treatment system were "not reliable," and that, to the extent the opinions of other experts "were based on Black's flawed cost estimate, . . . their testimony should also have been excluded."  Aplt. Opening Br. at 23-24.  We decline to review this issue on appeal because Duke "has failed to provide arguments or authorities in support." *Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1031 (10th Cir. 2007); *see also Bronson v. Swensen*, 500 F.3d 1099, 1105 (10th Cir. 2007) ("[C]ursory statements, without supporting analysis and case law, fail to constitute the kind of briefing that is necessary to avoid application of the forfeiture doctrine.").  Similarly, we need not address Duke's perfunctory assertion that the district court should have excluded "Black's opinions regarding groundwater remediation" because he had not calculated "the quantity of groundwater which could be produced from the site."  Aplt. Opening Br. at 23.

experience, training, or education to render an opinion. . . . [I]f the court determines that a witness is qualified, it must then determine whether her opinions are reliable." *Milne v. USA Cycling Inc.*, 575 F.3d 1120, 1133 (10th Cir. 2009) (brackets, citation, and internal quotation marks omitted); *see also United States v. Rodriguez-Felix*, 450 F.3d 1117, 1122-23 (10th Cir. 2006) (discussing district court's gatekeeper role). Because Duke does not claim that "the district court failed to employ the proper legal framework required by *Daubert*[ *v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)], we consider only whether the district court abused its discretion in actually applying this framework to the testimony at hand." *Rodriguez-Felix*, 450 F.3d at 1125. "We will not . . . disturb a district court's ruling absent our conviction that it is arbitrary, capricious, whimsical, manifestly unreasonable, or clearly erroneous." *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1232 (10th Cir. 2004).

Before allowing Black's testimony the district court held a pretrial *Daubert* hearing and considered the parties' various pleadings in opposition to and support of the proposed testimony. Thereafter, the court issued an order acknowledging Black's education and nearly 30 years' experience as an environmental consultant and ruling that Black could testify regarding his cleanup plan. The court acknowledged Duke's assertion that the soil samples relied upon by Black "do not cover a sufficient area to support his conclusion that contamination was extensive." J.A., Vol. 2 at 551. But it concluded that Duke had failed to "present

a sufficient basis for rendering [the evidence] inadmissible as unreliable." *Id.* "Instead," it said, "the deficiencies in his methodology should be the subject of cross-examination, as they impact the weight of Black's testimony." *Id.* The court also ruled that even though Black's cleanup plan was a one-page document with recommended remedial actions, the cost of each action, and a sum of the costs, it held "that any deficiencies in the plan . . . d[id] not render it inadmissible under Fed. R. Evid. 702"; rather, "such deficiencies go to the weight of the evidence and should be the subject of cross-examination." J.A., Vol. 2 at 547.

The district court's ruling was not "arbitrary, capricious, whimsical, manifestly unreasonable, or clearly erroneous." *Bitler*, 400 F.3d at 1232. The court heard extensive testimony about Black's education and experience, and about the methodologies he employed in this case. On review "we are concerned with" whether the district court performed "its obligation under Rule 702 and *Daubert*, not upon the exact conclusions reached to exclude or admit expert testimony." *Id.* In demonstrating that an expert's testimony is reliable, a "plaintiff need not prove that the expert is undisputably correct or that the expert's theory is generally accepted in the scientific community." *Id.* at 1233 (internal quotation marks omitted). "Instead, [a] plaintiff must show that the method employed by the expert in reaching the conclusion is scientifically sound and that the opinion is based on facts which sufficiently satisfy Rule 702's reliability requirements." *Id.* (internal quotation marks omitted). On the record

before us, plaintiffs met their burden. *See Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). In particular, Duke has not shown why Black could not properly testify that excavation to 19 feet was necessary given his testimony that (1) the groundwater level was 19 feet, (2) there was evidence that the condensate had seeped into the groundwater and traveled to neighboring areas, and (3) condensate had seeped into Duke's excavation from below. To be sure, Duke had plausible grounds for challenging Black's testimony, but the district court did not abuse its discretion in leaving the matter to the jury.

The argument by Duke that matches its statement of the second issue on appeal is that the district court improperly denied its motions for judgment as a matter of law and for a new trial. These motions were based on Duke's contention "that there was no evidence in the record from which the jury could find that the *extent* of the injury to the soil and groundwater directly caused by the leak extended beyond the area of the leak site itself." J.A., Vol. 2 at 385. According to Duke, "[e]ven if Plaintiffs' experts' testimony was properly admitted, [Duke] was and is entitled to judgment as a matter of law on the issue of the extent of the injury to the property because the evidence was not conflicting," Aplt. Opening Br. at 24. Alternatively, Duke asks this court to reverse and remand for a new trial.

-10-

We review de novo the district court's denial of a Fed. R. Civ. P. 50(b) motion for judgment as a matter of law (JMOL), "[d]rawing all reasonable inferences in favor of the nonmoving party." *Wagner v. Live Nation Motor Sports, Inc.*, 586 F.3d 1237, 1243-44 (10th Cir. 2009), *cert. denied*, 130 S. Ct. 2405 (2010). We will reverse the court's refusal to grant JMOL only "if the evidence points but one way and is susceptible to no reasonable inferences supporting the party opposing the motion." *Id.* at 1244 (internal quotation marks omitted). We review for an abuse of discretion the district court's denial of a Rule 59 motion for a new trial. *See M.D. Mark, Inc. v. Kerr-McGee Corp.*, 565 F.3d 753, 762 (10th Cir. 2009). Where, as here, "a new trial motion asserts that the jury verdict is not supported by the evidence, the verdict must stand unless it is clearly, decidedly, or overwhelmingly against the weight of the evidence." *Id.* (internal quotation marks omitted). In diversity cases, federal law governs whether JMOL or a new trial is appropriate, *see Wagner*, 586 F.3d at 1244 (JMOL); *Blanke*, 152 F.3d at 1235-36 (new trial), but the substantive law of the forum state governs analysis of the underlying claim, *see Wagner*, 586 F.3d at 1244 (JMOL); *Romero v. Int'l Harvester Co.*, 979 F.2d 1444, 1449 (10th Cir. 1992) (new trial).

Contrary to Duke's position, the jury was presented with evidence from which it could infer that the pipeline leak had affected the value of more than two acres. Experts testified that polluted material still existed at the initial excavation

-11-

site. Black testified that when polluted material is left in the ground, "[i]t travels, . . . goes through various type[s] of medias, whether it be soil or water," J.A., Vol. 4 at 1177, and can persist for 30 years. He also testified that the groundwater monitoring wells' test results indicated that the groundwater was polluted and was "expanding." *Id.* at 1173. In particular, he noted groundwater samples from a monitoring well not on Valley View's property but across the road, which showed that pollution had "migrated" and that the "service area of the groundwater pollution ha[d] expanded," which is what "you expect when you don't have the source removed and groundwater moves." *Id.* at 1163. Another of the plaintiffs' experts, Dr. Robert Knox (a groundwater hydrologist), further testified about the well off of Valley View's property, stating that its test results were "a very large concern," because they indicate "the contamination has moved off site" by flowing "with the groundwater." *Id.* at 1329. He said that without a proper cleanup the "problem gets worse" because groundwater is moving and spreading out. *Id.*

The jury also heard testimony from plaintiff Culpepper that the leak had affected the entire ranch's value, reducing the value "by at least half," *id.* at 1040, by making it unattractive to prospective buyers. Plaintiffs' real estate appraiser concurred, stating that the property "would not be marketable." *Id.* at 1265. On cross-examination he said that even if the two-acre area were carved out, buyers would not be interested in land near the polluted site, although he acknowledged

that if a larger area around the two-acre site were carved out, the remaining acreage could have a residual value of $210,000 (meaning that the decrease in value was $260,000). There was evidence that Valley View had sold some acreage near the leak site (but not on the 470-acre ranch) in 2008 for more than $1,000 per acre; but the record does not indicate whether the buyers were informed of the leak.

The jury observed the witnesses, heard the testimony, and reviewed the parties' exhibits. Its verdict of $131,500 implies both that it concluded that the pipeline leak impacted more than two of Valley View's 470 acres, and that it rejected contentions that the 470 acres had become worthless or had lost half its value. Having reviewed the record in light of the applicable deferential standards of review, we cannot conclude that the evidence "points but one way," *Wagner*, 586 F.3d at 1244 (JMOL) (internal quotation marks omitted), or that the verdict "is clearly, decidedly, or overwhelmingly against the weight of the evidence," *M.D. Mark, Inc.*, 565 F.3d at 762 (new trial) (internal quotation marks omitted).

## IV. Award of Prejudgment Interest to Mr. Culpepper

The district court granted plaintiffs' request that Mr. Culpepper be awarded prejudgment interest under Okla. Stat. tit. 12, § 727.[2] Duke agrees that § 727 applies to this case but contends that Mr. Culpepper cannot be awarded any

---

[2] Unless otherwise noted, all citations to Okla. Stat. tit. 12, §§ 727 and 727.1 are from the Oklahoma Statutes' 2008 Supplement.

interest because Oklahoma's State Treasurer has never certified what the rate of interest should be. To understand and evaluate Duke's contention, we must consider § 727, its successor statute, and what the State Treasurer did, and did not, certify with respect to interest rates.

Section § 727 is "applicable to all actions . . . filed . . . on or after January 1, 2000, but before January 1, 2005." *Id.* § 727(K). It governs prejudgment interest in this case because plaintiffs filed suit on February 25, 2004. Section 727(I) states:

> [P]ostjudgment interest and prejudgment interest . . . shall be determined by using a rate equal to the average United States Treasury Bill rate of the preceding calendar year as certified to the Administrative Director of the Courts by the State Treasurer on the first regular business day in January of each year, plus four percentage points.

The certification required by the State Treasurer seems simple enough, but a problem arose when the State Treasurer was given an additional certification duty under a successor statute to § 727. In 2004 the state legislature enacted Okla. Stat. tit. 12, § 727.1 (Supp. 2004). Section 727.1 did not repeal § 727 but it set the rate for prejudgment interest for suits filed "on or after January 1, 2005." Okla. Stat. tit. 12, § 727.1(K). Under § 727.1, that rate is:

> the prime rate, as listed in the first edition of the Wall Street Journal published for each calendar year and as certified to the Administrative Director of the Courts by the State Treasurer on the first regular business day following publication in January of each year, plus two percent (2%).

*Id.* § 727.1(I).

-14-

Unfortunately, the State Treasurer has not found it possible to perform two certifications for the same year. There is a published interest rate for the year 2004, calculated under § 727(I). *See* 2004 Notice Re: Interest on Judgments, *available at* http://www.oscn.net/applications/oscn/DeliverDocument.asp?Cite ID=438218. But the published interest rates for the years 2005, 2006, 2007, and 2008, which are listed in the statutory note to § 727, *see* Okla. Stat. tit. 12, § 727 ("NOTICE RE: INTEREST ON JUDGMENTS . . . . Interest rates since the inception of the law of November 1, 1986, are as follows:") were apparently calculated under § 727.1(I). The district court applied the published interest rates contained in the statutory note to § 727, ruling that "a party otherwise entitled to prejudgment interest should not be deprived of the same because of the absence of the . . . certification of interest rates applicable to § 727." J.A., Vol. 2 at 630.

"[A] federal court sitting in diversity applies state law, not federal law, regarding the issue of prejudgment interest. Although an award of prejudgment interest is generally reviewed for abuse of discretion, any statutory interpretation or legal analysis underlying such an award is reviewed de novo." *AE, Inc. v. Goodyear Tire & Rubber Co.*, 576 F.3d 1050, 1055 (10th Cir. 2009) (citation and internal quotation marks omitted). Further, under Oklahoma law a court's "goal in construing statutes is to determine the Legislature's intent." *Russell v. Chase Inv. Servs. Corp.*, 212 P.3d 1178, 1185 (Okla. 2009); *see also United States v. DeGasso*, 369 F.3d 1139, 1145 (10th Cir. 2004) (observing that if "the state

-15-

supreme court has not interpreted a provision of the state's statutory code, the federal court must predict how the court would interpret the code in light of state appellate court opinions, decisions from other jurisdictions, statutes, and treatises" (brackets and internal quotation marks omitted)).

Guided by these standards, we affirm the district court's award of prejudgment interest. We cannot agree with Duke that the legislature intended that a party otherwise entitled to prejudgment interest under § 727 should be totally deprived of that interest because of a glitch in the procedure for computing that interest. Would parties be deprived of prejudgment interest under § 727.1 if the *Wall Street Journal* ceased publication? The more difficult question is what interest rate to apply. But Duke has made no argument on that point, so we must affirm the rate chosen by the district court.

## V.  Conclusion

For the foregoing reasons, we reject Duke's appellate arguments and AFFIRM the amended judgment of the district court.

Entered for the Court

Harris L Hartz
Circuit Judge

-16-