J.C. HOUCK and Ruth O. Houck,
Appellants/Counter–Appellees,

v.

HOLD OIL CORPORATION, a Florida
corporation, Appellee/Counter–
Appellant.

Nos. 69492, 70460.

Supreme Court of Oklahoma.

Dec. 21, 1993.

William B. Rogers, Tod J. Barrett, William B. Rogers & Associates, Oklahoma City, and Robert L. Briggs and Marc F. Conley, Houston and Klein, Inc., Tulsa, for appellants.

Ronnie May, Gotcher & May, McAlester, for appellee.

LAVENDER, Vice Chief Justice:

## FACTS AND PROCEDURAL HISTORY

Appellants/counter-appellees, J.C. Houck and Ruth O. Houck (Houcks) purchased the surface estate to eighty acres of undeveloped lakefront property near Lake Eufaula. The tract was subject to an oil and gas lease subsequently assigned to appellee/counter-appellant, Hold Oil Corporation (Hold).

In March 1982, the Houcks discovered Hold had excavated a reserve pit and destroyed trees, timber and underwood in the process of building an access road to its first gas well site. This well was drilled in March 1982 prior to the effective date (July 1, 1982) of the Surface Damage Act (Act), 52 O.S.Supp.1982, § 318.2 et seq. Subsequently, an employee of the Houcks negotiated with Hold to settle damages to the surface estate. Hold later notified Houck of its intent to drill a second gas well, which was commenced in September 1982. However, no settlement was finalized between the parties.

The Houcks sued Hold for injuries to the property caused by the drilling of the wells. Observing that Hold had a legitimate property right to enter and start drilling operations under the lease and finding Hold had not acted arbitrarily, capriciously or maliciously with respect to the Houcks' property rights,

the trial court declined to submit any issue of punitive damages to the jury. He also ruled Hold was not a trespasser in exercising its property rights, and was not liable for treble damages under 23 O.S.1981, § 72, a statute concerning injury to trees.

The trial court further took the position that from the commencement of the drilling of the first well (March 1982) to the completion of the second well in September 1982 the drilling activities on the property were one continuous operation. On this basis he ruled the damage provisions of the Act retroactively applied to both wells. He also noted neither party presented evidence to clearly distinguish damages caused by the drilling of the first and second gas wells, but we note the trial court's ruling as to recovery of damages under the Act came at the beginning of trial; in other words, prior to the parties presenting any evidence on the issue. Although the trial court repeated his pretrial ruling after the Houcks' case in chief and again prior to instructing the jury on the law, the parties were told at the start of trial the matter would be tried under the damage provisions of the Act and not the common law rules as to the standard of liability for the recovery of damages in effect prior to the effective date of the Act.[1] Contrary to his ruling as to the standard of liability for recovery of damages, the trial court decided the treble damage provision of the Act [52 O.S.Supp.1982, § 318.9] did not apply because when Hold initiated operations in March 1982 and drilled the first well the Act was not yet effective and it would have been impossible for Hold to have complied with the notice, settlement agreement or appraiser provisions of the Act prior to such effective date.

The jury returned a verdict for the Houcks for both permanent ($5,600.00) and temporary ($24,400.00) damages. After trial, Hold's motion for judgment notwithstanding the verdict was partially granted. Its motion for new trial was denied. The temporary damage award was reduced from $24,400.00

---

1. Hold objected to the trial court's ruling at the beginning of trial, at the end of the Houcks' case· in chief and prior to instructing the jury.

to $5,600.00, and consequently, the jury's verdict was reduced from $30,000.00 to $11,200.00. Hold had sought to lower the total award to $5,600.00. The Houcks were also awarded attorney fees and costs. Both parties appealed.

The Court of Appeals affirmed in part and reversed in part. They affirmed the jury's award of $5,600.00 for permanent injury to the surface, the trial court's determination not to instruct the jury on the issue of punitive damages, and the trial court's refusal to award treble damages for injury to timber, as provided in 23 O.S.1981, § 72. They also affirmed trial court rulings rejecting the following defenses raised by Hold: statute of limitations, latches and an argument it was not liable for any damages because the drilling operations were performed by an independent contractor. They rejected a claim by the Houcks the case was wrongfully transferred from Oklahoma County to Pittsburg County. Also rejected was an attack by Hold the Act was impermissibly applied retroactively and was unconstitutional as an impairment of contract. They reversed the trial court's decision to grant Hold judgment notwithstanding the verdict, and reinstated the jury's verdict on temporary damages in the amount of $24,400.00. They further declared the trial judge abused his discretion by not trebling the damage award under § 318.9 of the Act. Finally, the Court of Appeals vacated the trial court's award of attorney fees in favor of the Houcks because in their view the trial court erred in setting the amount thereof. The issue of attorney fees was remanded to the trial court for the setting of an appropriate amount in favor of the Houcks. Hold petitioned for certiorari which we previously granted.

## ISSUES

Hold raises the following issues on certiorari. It contends because it was not a wilful and knowing violator of the Act, the Houcks are not entitled to treble damages under § 318.9. It further argues the only damages

the Houcks are entitled to recover are those representing the diminution in market value, which it asserts is $5,600.00 and together with this argument that the jury was improperly allowed to award both permanent and temporary damage for the same injuries. Hold also argues it should have been entitled to differentiate damages as to the first and second wells because one was drilled prior to the effective date of the Act and one after, i.e. that the common law rules as to recovery of damages in effect prior to the effective date of the Act were applicable to the first well. It also claims the trial and appellate courts' retroactive application of the Act in this case is unconstitutional because it violates the constitutional prohibition against impairment of contracts. OKLA. CONST. art. II, § 15; U.S. CONST. art I, § 10. Finally, Hold asserts the Court of Appeals' application of the treble damage provision of the Act violates the constitutional provision as to *ex post facto* laws because drilling was commenced prior to the effective date of the Act. OKLA. CONST. art. II, § 15.[2]

We reverse and remand for a new trial on the basis Hold should have been allowed to differentiate injury caused by the first and second wells. The first well, having been completed prior to the effective date of the Act, was not covered by the Act, but the rules of the common law in effect prior thereto as to the standard of liability for the recovery of damages. The second well was covered by the Act having been commenced after the effective date of the Act. We also hold the record does not support an award of treble damages under the Act because the Houcks failed to carry their burden to show Hold was a wilful violator of § 318.9. In that we are reversing and remanding for a new trial we finally provide guidance to the parties and the trial court as to the proper measure of damages under both the Act and the common law.

### I.

We first address Hold's contention it was entitled to differentiate the damages associ-

---

2. The issues decided by the Court of Appeals affirming trial court rulings concerning punitive damages, trebling damages under 23 O.S.1981, § 72, transfer of the case from Oklahoma County to Pittsburg County, independent contractor, statute of limitations and latches are not challenged by either party on certiorari. We, thus, need not concern ourselves with them.

ated with the first well from the second well. Prior to a discussion of the applicable law we must initially decide whether the trial court was correct when he ruled that from commencement of the drilling of the first well in March 1982 to the drilling of the second well in September 1982 the operations of Hold were of a continuous nature. We believe the trial court erred in such determination.

■ Neither party points to any part of the record which indicates the drilling of the two wells was simply one continuous endeavor by Hold. In fact, the trial judge seems to have merely held this view prior to the presentation of any evidence. As we view the evidence the first well was drilled in March 1982 and completed in March before the effective date of the Act. Commencement of the second well was in September 1982 and the well was completed in September. Although the road built by Hold to get to the second well was an extension of the one to the first well there is simply no competent evidence in the record that when the first well was drilled plans had then been laid to begin operations toward the drilling of the second one or that such operations were immediately begun to drill the second well after the first well was completed. In fact, from the evidence in this record the Houcks were notified in the summer (apparently July 1982) that Hold was planning to drill the second well because the first well turned out to be inadequate to properly drain the gas underlying the property. Thus, as far as the record is concerned there was a matter of some months between completion of the first well and any operations (i.e. road building or drilling operations) geared toward commencing the drilling of the second well. With this factual matter cleared up we turn to a discussion of the applicable law.[3]

■ Prior to the Act, in the absence of a contractual provision in the oil and gas lease providing otherwise, an oil and gas operator was liable for surface damage only if such damage resulted from wanton or negligent operations or if the operations affected more than a reasonable area of the surface. *Wilcox Oil Co. v. Lawson*, 341 P.2d 591, First Syllabus (Okla.1959). In other words, the operator would not be liable for surface damage resulting from the "reasonable" use of the surface which was necessary to the oil and gas operations. *Davis Oil Co. v. Cloud*, 766 P.2d 1347, 1349–1350 (Okla.1986).

In *Davis* we upheld the authority of the Legislature to modify this rule of the common law over an argument to do so was a violation of the constitutional provisions prohibiting the impairment of contracts when applied to leases pre-dating the effective date of the Act. In upholding the Act we said:

> As the purpose of a mineral grant or lease is to operate for the recovery of gas or oil, it is necessarily implied that the right to enter the premises is included in that grant. However, the question before us [ ] is not whether that right, which is in the nature of a property right, continues in existence. The question before us [ ] is whether the standard of liability for damages occurring to the surface estate as a result of the exercise of that right may be changed.
>
> \* \* \* \* \* \*
>
> The limitation on the operator's liability in the exercise of that right is to be viewed as no more than a defense which has been provided to the operator by operation of the common law in actions for damages by the surface estate holder.

*Id.* at 1349–1350.

■ In that no person has a vested interest in any rule of the common law we held the common law defense to liability of reasonable use was susceptible to being changed or modified by the Legislature in the exercise of the state's police power and, thus, the Act's abolition of the defense was not an impermissible impairment of contract. *Id.* at 1350–1352.

---

**3.** It should be noted again Hold raised the issue of the Acts' applicability. as to the standard of liability which would attach to the drilling of the first well at the beginning of trial, at the close of the Houcks' evidence and again prior to the jury being instructed. Each time it asserted the Act, at a minimum, should not apply to the first well. Although it also alternatively argued neither well should be governed by the Act because its lease pre-dated the Act, each time the issue was raised the trial court indicated both wells would be governed by the Act.

■ We, however, were not presented in *Davis* with the situation of a well drilled prior to the effective date of the Act. In our view, the Legislature did not intend the Act to apply to wells drilled and completed prior to the effective date of the Act.

Nowhere in the Act is there an express provision indicating legislative intent to apply the Act to wells drilled prior to the Act's effective date. In 52 O.S.Supp.1982, § 318.2 definitions for operator and surface owner are provided. They are as follows:

"Operator" means a mineral owner or lessee who is engaged in drilling or preparing to drill for oil and gas; and [ ] "surface owner" means the owner or owners of record of the surface of the property on which the drilling operation is to occur.[4]

Section 318.3 speaks in terms of giving notice to surface owners "[b]efore entering upon a site for oil and gas drilling ... ." Section 318.5(A) provides, "[p]rior to entering the site with heavy equipment, the operator shall negotiate with the surface owner for the payment of any damages which may be caused by the drilling operation." Obviously, the plain meaning of these provisions appear to contemplate a scenario where the drilling activity associated with a well is conducted after the effective date of the Act.

■ The general rule is that statutes are to be given prospective operation unless the purpose and intent of the Legislature to give them a retrospective effect is expressly declared or implied from the language used. In case of doubt the doubt must be resolved against the retrospective effect. *Phillips v. H.A. Marr Grocery Co.*, 295 P.2d 765, 768 (Okla.1956). Further, as in other matters concerning statutory interpretation whether to give a statute prospective or retroactive effect should be controlled by the fundamental or transcendent canon of statutory construction, to wit: to give effect to the legislative design. *In re Bomgardner*, 711 P.2d 92, 95–96 (Okla.1985); *Wickham v. Gulf Oil Corp.*, 623 P.2d 613, 615–616 (Okla.1981).

■ The general purpose of the Act, as we recognized in *Davis*, was an effort by the Legislature to provide a mechanism to balance the conflicting interests of the owners of two of our State's important natural resources; the mineral interest holder on the one hand and the land owner on the other. *Davis*, 766 P.2d at 1351–1352. The Act was a recognition that not only are the mineral resources or wealth underlying the surface a vital resource which support an important industry in our State, but the surface is also a vital resource which supports development of business, industry and residential endeavors, and our vital agricultural industry. *Id.* at 1351. The Act was an attempt to guarantee the development of one industry is not undertaken at the expense of another when the vitality of both is of great consequence to the well-being of our State economy. *Id.*

To effectuate this balance, however, as we view the Act, the Legislature gives neither by express declaration nor do we discern by necessary implication any indication of an intent to apply the provisions of the Act to drilling operations which have culminated in the completion of a well prior to the effective date of the Act. Common sense would seem to dictate that because the notice provisions of the act, the settlement negotiation provisions and those calling for appointment of appraisers [§ 318.3 and § 318.5] are supposed to take place prior to the commencement of drilling or related activity there was no legislative intent to apply the Act to wells already completed. In that the Act by express language is geared toward future activity we fail to find any legislative intent that would require application to the first well which was completed prior to the effective date of the Act.

Our ruling is consistent with cases such as *Phillips v. H.A. Marr Grocery Co., supra* where we held a statute extending the jurisdiction of the State Industrial Commission to injuries suffered outside the State would not

---

**4.** In that there is no competent evidence in the record to support the trial court's view the drilling of the two wells was merely one continuous operation we need not and do not decide what meaning to ascribe to the definition of an operator who is "engaged in drilling". Here there is no indication Hold was engaged in drilling activities on the Houcks' property on July 1, 1982, but to the contrary, the evidence is that the first well was completed in March 1982 and the second well or activities related to it began sometime after July 1, 1982.

be applied retrospectively to permit recovery for an injury outside the State which occurred before passage of the statute. 295 P.2d at 768–769. It is also consistent with *Thomas v. Cumberland Operating Co.*, 569 P.2d 974 (Okla.1977), where we refused to give retroactive application to a statute which permitted the recovery of new elements of damage in a wrongful death case where the death had occurred prior to the effective date of the statute. *Id.* at 975–977. Accordingly, it was error for the trial court to treat the two wells the same for purposes of the Act. As to the standard of liability for the recovery of damages the first well should have been tried and submitted to the jury on proper instructions under the common law applicable prior to the effective date of the Act and the second well should have been submitted to the jury on proper instructions under the Act.

## II.

■■■■ As we already noted in Part I we held in *Davis* the Act's application to leases pre-dating the effective date of the Act was not an impermissible impairment of contract in violation of either the Oklahoma or United States Constitutions. In that Hold's argument is virtually identical to that rejected in *Davis* on this point we adhere to our decision there and hold that as to the second well it would be permissible to apply the Act as to the standard of liability for damages rather than the prior common law notwithstanding the fact Hold's lease pre-dated the effective date of the Act. In its capacity as an oil and gas lessee, Hold had no vested contractual right to the common law standard of reasonable and necessary use of property as a defense in so far as the second well was concerned because the well was commenced and completed after the effective date of the Act. Exercising its police power in addressing an important and legitimate public interest, the Oklahoma Legislature abolished the defense when it enacted the Surface Damage Act. *Davis,* thus, established that such legislation does not unconstitutionally impair vested contract rights.

## III.

We next decide whether the Court of Appeals correctly found Hold liable for treble damages under the Act. Section 318.9 of the Act provides in pertinent part:

Upon presentation of clear, cogent and convincing evidence that the operator willfully and knowingly entered upon the premises for the purpose of commencing the drilling of a well before giving notice of such entry or without the agreement of the surface owner, the court may, in a separate action, award treble damages. The issue of non compliance shall be a fact question, determinable without jury, and a *de novo* issue in the event of appeal.

Any operator who willfully and knowingly fails to keep posted the required bond or who fails to notify the surface owner, prior to entering, or fails to come to an agreement and does not ask the court for appraisers, shall pay, at the direction of the court, treble damages to the surface owner.

Obviously, Hold could not be liable for treble damages based on drilling the first well because the Act does not apply to a well completed prior to the effective date of the Act. The Act does apply to the second well by virtue of our holdings in *Davis* and here. However, even though there is evidence to show Hold violated the provisions of § 318.9, there is no clear, cogent and convincing evidence any such violations were done willfully.

■■■ In that § 318.9 provides the issue of violation is a *de novo* one in the event of an appeal the standard of appellate review is a nondeferential one, according no weight to a lower tribunal's determination of the issue. *See Brown v. Burkett,* 755 P.2d 650, 651 (Okla.1988); *Mahan v. NTC of America,* 832 P.2d 805, 807–808 (Okla.1992) (Opala, J. concurring) (employment relationship in workers' compensation cases is subject to *de novo* appellate review). Our review of the matter is, thus, an independent one based on a nondeferential review of the record facts. *Id.*

■■■■ Further, the burden of proof on the issue of treble damages under § 318.9 is on the party attempting to recover the damages, here the Houcks. They must not only

show a violation of one of the specific matters contained in § 318.9, but that the violation was wilful on the part of the operator. The Houcks failed to so show.

In that § 318.9 provides for the recovery of treble damages it is in the nature of a penal statute. *Tower Oil & Gas Co. v. Harmon,* 782 P.2d 1355, 1357 (Okla.1989) (referring to treble damages under § 318.9 as a penalty and penal liability); *Samson Resources Co. v. Cloud,* 812 P.2d 1378, 1380–1381 (Okla.Ct.App.1991); *See also Maxwell v. Samson Resources Co.,* 848 P.2d 1166, 1171–1173 (Okla.1993) (statute allowing threefold the damages sustained for operator's failure to pay working interest revenues is penal); *Crow v. Davidson,* 186 Okl. 84, 96 P.2d 70 (1939) (statute providing for treble damages for forcible ejection or exclusion from real property is penal statute). As a penal statute § 318.9 must be strictly construed [*Maxwell v. Samson Resources Co., supra,* 848 P.2d at 1172] and the situations subjecting an individual to the penalty of treble damages should not be enlarged by judicial construction. *Crow v. Davidson, supra,* 96 P.2d at 72. Further, as a penal statute, particularly one providing that only wilful violations subject an offender to liability, some form of wrongful intent or motive must be shown to invoke the strictures of the penalty. *Maxwell v. Samson Resources Co., supra,* 848 P.2d at 1172–1173; *Shields v. State,* 184 Okl. 618, 89 P.2d 756, 760–761 (1939).

The Houcks' point to evidence in the record (essentially the testimony of Mr. J.C. Houck) that Hold commenced drilling operations before giving notice to them and without their agreement. Section 318.5(A) provides that when a written contract is signed on surface damages the operator may enter the site to drill. However, if agreement is not reached the operator must petition the district court in the county where the drilling site is located for appointment of appraisers and when this is done the site may be entered to commence drilling. § 318.5(A). Hold did not petition the district court for appointment of appraisers.[5] Hold presented evidence it did give notice prior to drilling the second well and that it thought it had an oral agreement with the Houcks concerning surface damage in the form of its agreement to build and maintain a surface access road for the Houcks over the land of adjoining property and the Houcks' own property. Such an agreement was sent to the Houcks, but was never executed by them.[6]

As we independently view this evidence we do not believe it is clear, cogent and convincing that Hold failed to give notice of its intent to drill. Furthermore, although the evidence is probably sufficient to meet the clear, cogent and convincing standard as to entering the site to drill prior to the signing of a written agreement on the issue of surface damages we believe the evidence of Hold's belief it had an oral agreement with the Houck's as to surface damages, coupled with the failure of the Houcks to point to any evidence in the record which would show a wrongful intent or motive on the part of Hold to violate the Act's provisions, leads to the conclusion the Houcks failed to carry their burden to show such was a wilful violation.

From a reading of the Houcks' appellate submissions it is as if the requirement of wilfulness has simply been ignored and read out of § 318.9. The trial court made no determination of wilfulness. Further, the Court of Appeals makes no independent determination of wilfulness and they point to no evidence in the record which would sustain such a finding. As far as the instant record is concerned Hold entered the property under the belief an oral agreement had been reached with the Houcks. As we view the record it supports only a determination Hold's conduct was based on an innocent misapprehension, rather than a wilful violation of any of the Act's provisions. *Samson Resources Co. v. Cloud, supra,* 812 P.2d at

---

**5.** The Houcks do not rely on any failure of Hold to post the proper surety bond as required by 52 O.S.Supp.1982, § 318.4 which is another violation under § 318.9 that may result in the award of treble damages against an operator.

**6.** We note we read nothing in the Act that would forbid the settlement agreement concerning surface damages to be one calling for something other than the payment by the operator of monetary damages to the landowner.

1380–1381 (innocent filing for appraisers in wrong county will not support treble damage award).

In making our decision on the treble damage issue we also cannot ignore the fact that at the time of the drilling of the second well the Act was in its infancy. No case had yet fleshed out the procedural aspects of the Act as they are associated with the Act's treble damage provisions. In these circumstances, i.e. the evidentiary dispute concerning notice, the evidence of Hold an oral agreement was reached on the issue of damages, the fact the Act was in its infancy and the fact neither the Houcks or the Court of Appeals point to any evidence which would support a determination of wrongful intent or motive on the part of Hold to violate the provisions of the Act, we conclude it was improper for the Court of Appeals to invoke the treble damage provisions of § 318.9.[7]

Hold also claims the treble damage provision of § 318.9 as applied to its drilling operations commenced prior to the effective date of the Act is violative of OKLA. CONST., art. II, § 15, as an *ex post facto* law. In that we reverse the Court of Appeals' decision regarding treble damages because the Houcks failed to carry their burden on the issue of treble damages, we need not address this contention.

## IV.

We next turn to the proper measure of damages under both the Act and the common law for injury to the Houcks' land caused by drilling of the two wells. As noted above, the Act would be applicable for injury caused by the drilling of the second well; the common law for injury caused by drilling activities associated with the first well. We discuss the proper measure of damages under the common law first.

 Under the common law in effect prior to the Act, as we have noted in Part I, the oil and gas operator is liable for damages if injury to the surface estate resulted from wanton or negligent operations or if the operations affected a more than reasonable area of the surface. *Davis,* 766 P.2d at 1349. Thus, as to the first well, for the Houcks to recover *at all* they must show any injury to the surface was caused by some unreasonable conduct on the part of Hold in conducting the oil and gas operations or that more of the surface was used than necessary to prudently carry out the drilling and related activities. They, thus, cannot recover damages simply for the occupation or use of that part of the surface estate reasonably necessary for the drilling operations and production of any oil and gas. In our view, however, if on remand they prove some wanton or negligent operations or that the operations affected more than a reasonable area of the surface, they are entitled to recover all damages caused thereby, including temporary or permanent damages, as long as no double recovery is allowed for the same injury.

 For temporary injury to land the measure of damages is the cost of restoring the land to its former condition, with compensation for loss of use of it, if this altogether is less than the diminution in value with the injuries left standing. *Enid & A. Ry. Co. v. Wiley,* 14 Okl. 310, 78 P. 96, 99 (1904). This is so because if the cost of repairing the injury is greater than the diminution in market value of the land, the latter is the true measure of damages; the rule of avoidable consequences requiring that in such case the plaintiff shall diminish the loss as much as possible. *Id.*[8]

---

7. As in *Maxwell v. Samson Resources Co.,* we need not determine the exact degree of wrongful intent or motive which might support a treble damage award because neither the trial court or Court of Appeals made any determination of wrongful intent or motive. 848 P.2d at 1173. In that the Houcks point to no evidence showing any wrongful intent or motive and, as mentioned in the text, completely ignore the element of § 318.9 concerning wilfulness it is our view they, as the party having the burden of proof on the issue, failed to carry that burden and the Court of Appeals erred in trebling the damage award under § 318.9.

8. We note there may be a correlation between the cost of repairing a temporary injury to real property and the diminishment in its value if the land is left unrestored. 22 AM.JUR.2d *Damages* § 402 (1988). To us this appears obviously so because a buyer would presumably factor into any price he or she may be willing to pay for the property the cost it would take to repair the injury.

■ The measure of damages for permanent injuries to land is the difference between the reasonable market value of the land immediately before the injuries and the reasonable market value of the land immediately after the injuries. *Kerr–McGee Corporation v. Petchinsky*, 438 P.2d 475, First Syllabus (Okla.1968). Also, if the wrongful act somehow adversely affected the entire parcel or the use thereof, it is appropriate to compute the damages on the basis of the diminution of the value of the total acreage and not just on the value of the portion damaged. 22 AM.JUR.2d *Damages* § 411 (1988).

We have furthermore held there may be permanent damage to one part of a tract while other parts of the tract suffer injuries causing only temporary damage. *Lanahan v. Myers*, 389 P.2d 92 (Okla.1963); *See also Briscoe v. Harper Oil Co.*, 702 P.2d 33, 40–42 (Okla.1985) (Summers, J. dissenting) (interpreting *Lanahan* ). In *Lanahan*, an oil and gas lessee was sued for using the surface estate for reserve pits for an unreasonable length of time. This injury to the landowners' surface estate was characterized as causing temporary damage. Certain roads on the property were also claimed to be in need of repair by the actions of the lessee. This injury was also characterized as causing temporary damage. For the temporary damage the landowners presented evidence of the reasonable and necessary cost of filling in the unused pits and repairing the roads. In addition to such damages lessee was also sued for the building of excess roads (i.e. unnecessary roads) and allowing salt water, oil and waste substances to flow over the surface estate causing permanent damage to 5–7 acres (i.e. complete ruining of these acres). We affirmed recovery for both temporary (the cost of filling the pits and repairing the roads) and the permanent damage to the 5–7 acres caused by the excess roads and the allowance of deleterious substances to flow over these acres.

■ *Lanahan* appears to make clear there may be temporary damage to one part of a parcel and permanent damage to another part and that it is proper to allow recovery for both. However, in the instructions to the jury it must be made clear no double recovery is allowed for the same injury. *Briscoe v. Harper Oil Co., supra,* 702 P.2d at 40–42; *See also Oklahoma City v. Page,* 153 Okl. 285, 6 P.2d 1033, 1039 (1931) (both temporary and permanent damages may be recovered in the same action but it is improper to allow a double recovery for the same item of damage).

As we view the record it appears the Houcks are claiming, as in *Lanahan,* the activities of Hold caused both temporary and permanent damage to separate portions of their land. They claim permanent damage based upon allegations Hold used more surface for either the road to the first well site and/or the well site itself than was necessary in the drilling operations. They also claim wanton or negligent conduct of Hold caused temporary damage to other portions of the tract in that in building the road and clearing the well site numerous trees (estimates ranged as high as 400–450 trees were involved) were merely pushed to the side of the well site and the sides of the road and left there after the drilling activities were complete. The Houcks also claim temporary damage in the form of Hold using soil or dirt from their property to build a road off their property. Thus, under *Lanahan* the Houcks would be entitled to recover both temporary and permanent damage for these claimed injuries as long as it is made clear to the jury no double recovery can be recovered for the same item of damage.

■ Further, in that for temporary damage alone under *Enid & A. Ry. Co. v. Wiley, supra,* recovery cannot exceed the diminished reasonable market value of the tract immediately before and after the injuries if the land was left unrestored, when injuries are both permanent and temporary a defendant can in no event be held liable for more than the total diminution in reasonable market value assuming the temporary injuries were left standing or unrestored. We now turn to a discussion of the proper measure of damages under the Act.

■ On at least three occasions we have held the damage standard intended by the Legislature under the Act is the diminution

in the fair market value of the surface property resulting from the drilling operations. *Davis Oil Co. v. Cloud, supra*, 766 P.2d at 1352–1353; *Andress v. Bowlby*, 773 P.2d 1265, 1267 (Okla.1989); *Dyco Petroleum Corp. v. Smith*, 771 P.2d 1006, 1008 (Okla. 1989). This measure of damages was found to be the appropriate one because of our determination an action under the Act partakes of the nature of a condemnation action by virtue of 52 O.S.Supp.1982, § 318.5(F), which provides that a trial under the Act shall be conducted and judgment entered in the same manner as railroad condemnation cases. *Davis*, 766 P.2d at 1347; *See also Dyco Petroleum Corp. v. Smith, supra*, 771 P.2d at 1009 (an action under the Act clearly partakes of the nature of a condemnation action); *Santa Fe Minerals, Inc. v. Simpson*, 735 P.2d 1206, 1208 (Okla.Ct.App.1987) (recognized *Davis* specifically held factors and elements of damages under condemnation law are properly applied under the Act).

We also held in *Dyco Petroleum Corp. v. Smith, supra*, that it was not error to consider the affect the drilling operations may have on an entire tract, i.e. compensation is not limited only to the value of the land actually occupied by the drilling operations (access roads, drill site, etc.), but the diminished value of the entire tract caused by the drilling operations is a proper measure of damages under the Act. 771 P.2d at 1008. This determination was simply a recognition of the longstanding measure of damages under condemnation law to the effect, where only a part of a tract is condemned and damages are sought for the value of that taken, and for damages to that not taken, the measure of damages is the difference between the fair market value of the whole property immedi-

ately before the taking and the fair market value of the portion left immediately after the taking. *State ex rel. Department of Highways v. Robb*, 454 P.2d 313, 315 (Okla. 1969).

 We also approved of an instruction in *Davis* which listed various factors that might be considered in arriving at the decrease in fair market value. *Davis, supra*, 766 P.2d at 1352. One of the factors approved of was whether or not the damages were of a temporary or permanent nature. *Id.* The several factors identified in *Davis* are not to be considered as separate items of damage, but must be considered solely as they have an effect upon the diminishment in value of the surface estate before and after the drilling operations. *Davis*, 766 P.2d at 1352; *Dyco Petroleum Corp. v. Smith*, 771 P.2d at 1008. Thus, we reiterate here, the proper measure of damages under a case brought pursuant to the Act is the difference in the fair market value of the entire tract immediately before the drilling operations and the fair market value of the tract immediately after the drilling operations.[9]

In conformity with the views expressed, the opinion of the Court of Appeals is **VACATED IN PART,** the trial court judgment is **AFFIRMED IN PART AND REVERSED IN PART** and the matter is **REMANDED** for a new trial.[10]

HODGES, C.J., and HARGRAVE and ALMA WILSON, JJ., concur.

OPALA, J., concurs by reason of stare decisis.

---

9. We finally note that when considering the appropriate measure of damages under the Act caused by the drilling of the second well the starting point or base fair market value of the property immediately before the drilling of this well must take into consideration the diminishment in value or damages already caused by the drilling of the first well. This is so whether or not such diminishment in value or damage caused by the drilling of the first well is recoverable in part by the Houcks because some injury causing activity associated with drilling of the first well by Hold is determined to be a wanton, negligent or excessive use of the surface or, instead, is determined to be *damnum absque inju-*

*ria*, i.e. loss, hurt or harm without injury in the legal sense because some or all of the damages were caused only by the reasonable use of the surface by the oil and gas operator. *Davis Oil Co. v. Cloud*, 766 P.2d 1347, 1350 (Okla.1986).

10. In that we are reversing for a new trial no party is presently entitled to an award of attorney fees. The trial court ruling granting attorney fees to the Houcks and the Court of Appeals' ruling remanding to the trial court for determination of the proper amount of attorney fees to be awarded the Houcks are also vacated.

KAUGER, J., concurs in I and II; concurs in result as to III and IV.

SUMMERS and WATT, JJ., concur in part; dissent in part.

SIMMS, J., dissents as to I; concurs as to II, III and IV.