OSCN Found Document:CALYX ENERGY, LLC v. HALL

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 Court Dockets

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 CALYX ENERGY, LLC v. HALL
2015 OK CIV APP 1
Case Number: 111383
Decided: 12/12/2014
Mandate Issued: 01/07/2015
DIVISION II
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION II
Cite as: 2015 OK CIV APP 1, __ P.3d __

 
CALYX ENERGY, LLC, Plaintiff/Appellee,
v.
MARK R. HALL and RACHEL A. HALL, Defendants/Appellants.
APPEAL FROM THE DISTRICT COURT OF CREEK COUNTY, OKLAHOMA
HONORABLE JOE SAM VASSAR, TRIAL JUDGE
AFFIRMED AS MODIFIED
Sam T. Allen, IV, LOEFFLER, ALLEN & HAM, Sapulpa, Oklahoma, for Plaintiff/Appellee
Stephen J. Capron, CAPRON & EDWARDS, PLLC, Tulsa, Oklahoma, for Defendants/Appellees
JOHN F. FISCHER, PRESIDING JUDGE:
¶1 Mark and Rachel Hall filed this appeal challenging two attorney fee orders and two orders denying their request for treble damages in this surface damage case. Calyx also appealed the first of the attorney fee orders challenged by the Halls. The parties have failed to demonstrate any error by the district court. We modify the first of the attorney fee orders to correct a mathematical error and otherwise affirm the orders appealed.
BACKGROUND
¶2 Calyx filed this action pursuant to the Oklahoma Surface Damages Act, 52 O.S.2011 §§ 318.2 to 318.9,[1] to determine the amount it owed the Halls for conducting drilling operations on the Halls' real property. The Halls demanded a jury trial seeking surface damages in excess of the amount determined by the appraisers. They also sought treble damages pursuant to section 318.9 of the Act and joined with their demand a separate tort claim. Much of the history of this litigation is set forth in this Court's Opinion in Calyx Energy, LLC v. Hall, 2013 OK CIV APP 4, 295 P.3d 30 (Calyx I). The Halls' appeal in that case of three of the orders at issue in this appeal was dismissed for lack of appellate jurisdiction. Specifically, Calyx I held that because the Halls' request for treble damages based on the notice and negotiation provisions of section 318.9 of the Surface Damages Act remained unresolved, none of the orders related to the surface damage claim were appealable. Calyx I did not resolve, and we do not resolve here, whether the Halls' tort claim is a separate claim or part of one cause of action for the damage caused by Calyx's drilling operations. The tort claim was tried and reduced to judgment in favor of the Halls on March 6, 2012, has been satisfied, and is not a part of this or any other appeal.[2] As a result of further proceedings in the district court after our decision in Calyx I, the attorney fee and treble damage orders are now appealable.
STANDARD OF REVIEW
¶3 Whether a party is entitled to an attorney fee pursuant to a statute is a question of law, reviewed de novo. Boston Ave. Mgmt., Inc. v. Associated Res., Inc., 2007 OK 5, ¶ 10, 152 P.3d 880, 884-85. See also, Finnell v. Jebco Seismic, 2003 OK 35, ¶ 7, 67 P.3d 339, 342. The standard of review of the reasonableness of the attorney fees awarded is abuse of discretion. Tibbetts v. Sight'n Sound Appliance Ctrs., Inc., 2003 OK 72, ¶ 3, 77 P.3d 1042, 1046 (citations omitted). "[A]buse occurs when the ruling being reviewed is based on an erroneous legal conclusion or there is no rational basis in the evidence for the decision." Id.
¶4 An operator's liability for treble damages for violation of the Surface Damages Act is reviewed de novo. 52 O.S.2011 § 318.9; Houck v. Hold Oil Corp., 1993 OK 166, ¶ 23, 867 P.2d 451, 458. "In that § 318.9 provides the issue of violation is a de novo one in the event of an appeal the standard of appellate review is a nondeferential one, according no weight to a lower tribunal's determination of the issue." Id. 
ANALYSIS
¶5 On June 16, 2010, the jury verdict in favor of the Halls on the surface damage aspect of their claim against Calyx was reduced to judgment and filed in this case. Because the Halls recovered a "more favorable verdict than the assessment award of the appraisers," their motion for attorney fees and costs based on that judgment was granted. 52 O.S.2011 § 318.5(F). The order granting that motion was filed January 3, 2011. Pursuant to Title 52 O.S.2011 § 318.9, the treble damage aspect of the Halls' claim was tried to the district court on January 4, 2011. In an order dated January 31, 2011, and filed February 7, 2011, the Halls' request for treble damages based on Calyx's failure to post a location bond was denied by the district court. The Halls then filed a second motion for attorney fees based on the work done litigating the treble damage aspect of their claim. The order denying that motion was filed June 6, 2011. The Halls' request for treble damages based on the notice and negotiation aspects of their surface damage claim was denied as reflected in the order filed December 28, 2012. 
I. The Attorney Fee Orders
¶6 Citing general authority that one who accepts the benefit of a judgment cannot appeal that judgment, Calyx argues that the Halls have waived the right to appeal the award of attorney fees by executing on the location damage bond and subsequent replenishments of that bond. Calyx has not demonstrated the applicability of that general authority in this "special statutory proceeding." Ward Petroleum Corp. v. Stewart, 2003 OK 11, ¶ 7, 64 P.3d 1113, 1114. Because section 318.5(F) of the Act requires Surface Damages Act cases to be tried in the same manner as railroad condemnation cases, "it is appropriate to look to condemnation law for guidance . . . ." Id. In railroad condemnation cases, "the owner shall be entitled to the immediate receipt of the compensation awarded, without prejudice to the right of either party to prosecute further proceedings for the judicial determination of the sufficiency or insufficiency of said compensation." 66 O.S.2011 § 54.


The clearly established policy in Oklahoma in relation to condemnation actions is to allow the condemnee to be compensated for the taking of his interest as soon as possible after that taking has occurred. To that end the Legislature, at 66 O.S.1981 § 54 , has provided that the condemnee is immediately entitled to the receipt of the compensation awarded without prejudice to the right of either party to prosecute further proceedings regarding the award. 


Dyco Petroleum Corp. v. Smith, 1989 OK 51, ¶ 14, 771 P.2d 1006, 1009. "The purpose of the Surface Damages Act is to promote the prompt payment of compensation of a surface owner whose land is taken for oil and gas exploration." Schlumar, 2006 OK 32, ¶ 10, 136 P.3d at 659. The Halls have not waived the right to appeal the Janruary 3, 2011, attorney fee order. 
¶7 There is no dispute that the Halls are entitled to "reasonable attorney fees" with respect to the surface damage aspect of this litigation. "[A]ll court costs including reasonable attorney fees shall be assessed" against Calyx because the Halls obtained a judgment for more than the amount assessed by the appraisers. 52 O.S.2011 § 318.5(F). The Halls contend that the amount of that fee is determined by the contract with their attorney. Whether "reasonable attorney fees" as that term is used in section 318.5(F) is determined solely by a surface owner's contractual obligation to an attorney has not been previously decided. 
¶8 The Halls entered into a contract with their attorney to represent them in this litigation for an amount equal to a specified hourly rate multiplied by the time devoted to their representation. They requested $90,998.40 in attorney fees based on the number of hours spent by their attorney multiplied by the contractual hourly rate. The hourly rate is not in dispute, but the number of hours expended by the Halls' attorney is disputed. After a hearing on the attorney fee issue, the district court, although noting uncertainty with respect to the controlling authority, applied the factors set forth in State ex rel. Burk v. City of Oklahoma City, 1979 OK 115, 598 P.2d 659, and awarded the Halls $43,375.00 of the $90,998.40 in attorney fees requested and $5,843.40 in costs. The Halls argue it was error for the district court to apply the Burk factors and reduce the amount of attorney fees awarded below the amount they are contractually obligated to pay their attorney.
¶9 In support of this contention, the Halls rely on State ex rel. Dep't of Transp. v. Allied Tower Co., Inc., 2006 OK CIV APP 71, 136 P.3d 718, and State ex rel. Dep't of Transp. v. Downey, 2007 OK CIV APP 107, 172 P.3d 225. Both cases stand for the proposition that if a landowner in a condemnation case is entitled to attorney fees, the amount is determined by the landowner's contractual obligation to the attorney in the absence of any evidence that the contractual obligation was excessive or unreasonable. Both cases also interpreted the attorney fee provision in the eminent domain statute, 27 O.S.2011 § 11(3): "the owner of any right, title or interest in such real property may be paid such sum as in the opinion of the court will reimburse such owner for his reasonable attorney . . . fees actually incurred because of the condemnation proceedings." Noting that this language was identical to the attorney fee statute in 66 O.S.2011 § 55(D) governing railroad condemnation cases, and that the eminent domain statutes provide that cases would be conducted pursuant to the procedure for railroad condemnation cases, the Allied Tower and Downey Courts followed the Supreme Court's holding in Oklahoma Turnpike Authority v. New Life Pentecostal Church of Jenks, 1994 OK 9, 870 P.2d 762 and Root v. KAMO Electric Coop., Inc., 1985 OK 8, 699 P.2d 1083. Those cases held that to be fully compensated for the taking of private property for a public purpose a landowner must be awarded any contractual attorney fee obligation as long as the obligation was not unreasonable or excessive. In part, the Allied Tower and Downey Courts derived that obligation from the statutory language entitling a landowner in a condemnation proceeding to reasonable attorney fees "actually incurred" 66 O.S.2011 § 55(D).
¶10 The attorney fee statute applicable in this case is distinguishable from the statutes at issue in New Life Pentecostal, KAMO Electric, Allied Tower and Downey. Title 52 O.S.2011 § 318.5(F) only authorizes an award of "all court costs including reasonable attorney fees." Unlike the attorney fee provisions in the condemnation statutes, the authorization for an award of attorney fees "actually incurred" does not appear in the Surface Damages Act attorney fee statute. "[T]he general rule is that nothing may be read into a statute which was not within the manifest intention of the legislature as gathered from the language of the act." Stemmons, Inc. v. Universal C.I.T. Credit Corp., 1956 OK 221 ¶ 19, 301 P.2d 212, 216. Further, the Surface Damages Act attorney fee statute was enacted after the railroad and eminent domain statutes and, therefore, the statutes providing for attorney fees "actually incurred" were clearly known to the Legislature adopting section 318.5(F). Consequently, the fact that the Legislature could have but did not use the "actually incurred" language is significant. "The law-making body is presumed to have expressed its intent in a statute's language and to have intended what the text expresses." Yocum v. Greenbriar Nursing Home, 2005 OK 27, ¶ 9, 130 P.3d 213, 219. 
¶11 This conclusion is compelled by Andress v. Bowlby, 1989 OK 78, 773 P.2d 1265. In Andress, the surface owners sought to recover their expert witness fees as part of their costs noting that section 318.5 of the Surface Damages Act provides that the surface damage trial "shall be conducted and judgment entered in the same manner as railroad condemnation actions tried in the court." The surface owners argued that they were entitled to their expert witness fees because the railroad condemnation statute authorized the recovery of "reasonable attorney, appraisal, engineering, and expert witness fees actually incurred because of the condemnation proceeding." 66 O.S.2011 § 55(D). The Andress Court was not persuaded. 


We must reject appellees' argument that the statement in § 318.5(F) that directs that actions tried to the jury be conducted in the same manner as railroad condemnation cases necessarily implies that the statutory provision which allows the assessment of expert witness fees in such cases, 66 O.S.1981 § 55 (D), applies to authorize their recovery here. Although § 318.5(F) indicates that such cases are to provide a procedural framework for surface damage acts, the same provision also contains its own provision for assessing court costs and attorney fees. Were we to take the approach proposed by appellees, we would necessarily find this language regarding court costs and attorney fees to be mere surplusage. This would be contrary to basic tenets of statutory construction. Here the Legislature has set forth a provision for assessment of costs and attorney fees which applies specifically to surface damage act cases. We must read the act so as to give full effect to the language used. 


Bowlby, 1989 OK 78, ¶ 13, 773 P.2d at 1268. Although section 318.5(F) of the Surface Damages Act mandates that the "trial" of such cases shall be conducted and judgment entered in the same manner as railroad condemnation cases, as recognized by the Andress Court, there are substantive differences in the two acts. The "language used" in section 318.5(F) contains its "own provision" for awarding attorney fees and does not include authority for recovery of attorney fees "actually incurred."
¶12 Further, and contrary to the Halls' argument, Burk does apply. "The Burk criteria are the standard by which our courts test the reasonableness of attorney fee contracts as well as attorney fee awards." In re Adoption of Baby Boy A, 2010 OK 39, ¶ 27, 236 P.3d 116, 124-25. And, in every case, an attorney fee must be reasonable whether the fee is paid by the client or by the losing litigant. Morgan v. Galilean Health Enters., Inc., 1998 OK 130, ¶ 14, 977 P.2d 357, 364. The Halls' argument that they were entitled to an attorney fee award based solely on the contract with their attorney in this Surface Damages Act case is not persuasive and is contrary to controlling authority. 
¶13 Consequently, we review the reasonableness of the attorney fee awarded in the January 3, 2011, order. "The trial court here was in a singularly proper position to determine the reasonableness of the expenditures of time claimed in this case." Tower Oil & Gas Co., Inc. v. Keeler, 1989 OK 104, ¶ 6, 776 P.2d 1277, 1279. The Halls have not demonstrated any abuse of discretion by the district court in determining what attorney time was reasonably expended in this case. 
¶14 Calyx's counter-appeal contends that the amount of attorney fees awarded by the district court pursuant to the January 3, 2011, order was "excessive and certainly should not be increased." In essence, and to the extent Calyx disputes the amount of attorney fees awarded to the Halls, Calyx's argument centers on a few instances of attorney time perceived to be excessive or unnecessary. Calyx has not demonstrated that, if accepted, its argument would result in more of a reduction than ordered by the district court from the $90,998.40 originally requested by the Halls. And, with respect to its specific contentions, we once again rely on the district court "to determine the reasonableness of the expenditures of time claimed in this case." Id. 
¶15 Finally, however, the Halls contend, and Calyx concedes, that there was a mathematical error in the award of fees and costs in the January 3, 2011, order. The total amount of attorney fees and costs due to the Halls pursuant to that order is $51,218.40, not $45,375.00. The January 3, 2011, order of the district court is modified to reflect that amount and affirmed. 
A. The March 6, 2011, Attorney Fee Order
¶16 As previously discussed, the Halls' request for treble damages was tried to the district court and denied pursuant to the January 31, 2011, order. After the trial on the treble damage aspect of their Surface Damages Act claim, the Halls filed a second motion for attorney fees seeking fees for the time expended with respect to the trial of that matter. They appeal the denial of that motion contending that even though they did not prevail on the treble damage issue, they were the prevailing parties on their surface damage claim of which the treble damage issue was part.
¶17 As the Halls argue and this Court held in Calyx I, the Halls request for treble damages is "part of the statutory remedy provided by the [Surface Damages] Act to landowners for damage to the surface of their property resulting from oil and gas drilling operations." Calyx I, 2013 OK CIV APP 4, ¶ 15, 295 P.3d at 34. However, the treble damages statute provides that an operator's compliance with the location damage bond and notice provisions of the Surface Damages Act "shall be a fact question, determinable without jury . . . ." 52 O.S.2011 § 318.9. As such, the district court is required to conduct a "separate hearing" to determine a treble damage issue. Tower Oil & Gas Co., Inc., v. Harmon, 1989 OK 127, ¶ 6, 782 P.2d 1355, 1357. The Halls correctly cite the general rule that a party need not prevail on every issue in order to receive an award of attorney fees as the prevailing party in the Surface Damages Act case. It is not necessary that a party be completely successful in order to be the prevailing party. Commercial Commc'ns, Inc. v. State ex rel. Oklahoma Bd. of Pub. Affairs, 1980 OK 93, ¶ 8, 613 P.2d 473, 476. The general rule, however, is inapplicable in this Surface Damages Act case.
¶18 The right of the Halls to recover attorney fees is governed by the American Rule. TRW/Reda Pump v. Brewington, 1992 OK 31, ¶ 13, 829 P.2d 15, 22. This rule is firmly established and provides that courts are without authority to award attorney fees in the absence of a specific statute or exceptions not applicable here. Id. Unlike section 318.5(F), the treble damages statute does not contain any authorization for awarding attorney fees. Further, section 318.9 of the Surface Damages Act is in the nature of a penal statute and must be strictly construed. Houck v. Hold Oil Corp., 1993 OK 166, ¶ 25, 867 P.2d 451, 459. We agree with this Court's conclusion in Samson Resources Company v. Cloud, 1991 OK CIV APP 55, ¶ 10, 812 P.2d 1378, 1381: "While Section 318.9 provides that '[d]amages collected pursuant to this act shall not preclude the surface owner from collecting any additional damages caused by the operator at a subsequent date', attorney's fees . . . are not included in the provision." The Halls would not be entitled to attorney fees with respect to their request for treble damages even if they had prevailed on that issue.[3] 
II. The Treble Damages Order
¶19 In their final proposition of error, the Halls contend that the district court erred in denying their request for treble damages. The relevant statute provides:


Upon presentation of clear, cogent and convincing evidence that the operator willfully and knowingly entered upon the premises for the purpose of commencing the drilling of a well before giving notice of such entry or without the agreement of the surface owner, the court may, in a separate action, award treble damages. The issue of noncompliance shall be a fact question, determinable without jury, and a de novo issue in the event of appeal. 
Any operator who willfully and knowingly fails to keep posted the required bond or who fails to notify the surface owner, prior to entering, or fails to come to an agreement and does not ask the court for appraisers, shall pay, at the direction of the court, treble damages to the surface owner. 
Damages collected pursuant to this act shall not preclude the surface owner from collecting any additional damages caused by the operator at a subsequent date. 


52 O.S.2011 § 318.9. Section 318.9, therefore, authorizes the district court to impose treble damages in two circumstances: (1) an operator enters the premises before giving notice or obtaining the agreement of the surface owner, (2) an operator does not post a location bond. The Halls allege that Calyx violated both provisions. The location bond issue was resolved in the district court's January 31, 2011, order; the notice and negotiation issue was resolved in its December 28, 2012, order.[4]
A. The Location Damage Bond Issue
¶20 The operator of an oil and gas well is required to post a "plugging bond" (
17 O.S.2011 § 518) and a location damage bond (52 O.S.2011 §318.4). It is undisputed that after beginning its drilling operations on the Halls' property in May 2008, Calyx did not post the required location damage bond until September of 2009. It is also undisputed that Calyx did post the required plugging bond before it began drilling. At the hearing on this issue on January 4, 2011, two Calyx representatives testified. The testimony established, as the district court found, that the two bonds were in the same amount, that Calyx representatives confused the two bond requirements and that this mistake was made in good faith.
¶21 It was the Halls' burden to prove that Calyx "willfully and knowingly" violated section 318.9 by failing to post the location damage bond. Section 318.9 of the Surface Damages Act is penal in nature and must be strictly construed. Houck, 1993 OK 166, ¶ 25, 867 P.2d at 459. As such, the Halls were required to prove "some form of wrongful intent or motive . . . to invoke the strictures of the penalty." Id. (citing Maxwell v. Samson Res. Co., 1993 OK 23, 848 P.2d 1166). The district court concluded that the Halls had failed to do so. The Halls have advanced no argument in this appeal showing that the district court erred in doing so. Based on our de novo review of the hearing transcript and exhibits offered at the January 4 hearing, we conclude, as did the district court, that the Halls have failed to show that Calyx's failure to post the location damage bond resulted from the kind of "willful and wanton" conduct required for the imposition of treble damages. The district court's January 31, 2011, order is affirmed.
B. The Notice and Negotiation Issue
¶22 The Halls also contend that they are entitled to treble damages based on the first sentence of section 318.9: "Upon presentation of clear, cogent and convincing evidence that the operator willfully and knowingly entered upon the premises for the purpose of commencing the drilling of a well before giving notice of such entry . . . ." As the Halls construe section 318.9, the "notice" required by this provision is the same as the notice required by section 318.3. Section 318.3 requires an operator to notify a surface owner before entering the property and provide the approximate date and location of the proposed drilling operations. The Halls concede that there is no specific requirement in section 318.9 for the operator to negotiate in good faith. However, they derive this obligation from section 318.3: "Within five (5) days of the date of delivery or service of the notice of intent to drill, it shall be the duty of the operator and the surface owner to enter into good faith negotiations to determine the surface damages." The Halls argue that the district court erred when it "declined to hear evidence" on this issue and that the case should be remanded for a determination of whether Calyx provided the required notice. 
¶23 First, adopting the Halls' construction of these statutes, section 318.3 imposes a duty on "the operator and the surface owner to enter into good faith negotiations to determine the surface damages." (Emphasis added). Consequently, the Halls would first have to prove that they satisfied their duty to negotiate in good faith before being able to argue a breach of that duty by Calyx. The evidence of the Halls' good faith is not contained in this record. At the hearing on the treble damages issue, Mr. Hall testified that he received a letter from Calyx dated April 7, 2008. The letter notified the Halls that "pursuant to the requirements of Title 52 O.S. § 318.3" Calyx intended to drill on their property, expressed Calyx's desire to resolve their surface damages by negotiation rather than an action in district court, and gave them contact information for a Calyx representative they could call to begin those negotiations. By April 10, 2008, the Halls' attorney had contacted the Calyx representative and advised that he would try and get settlement authority from his clients. On April 21, 2008, the Calyx representative transmitted a copy of the petition it had filed in the surface damage case to the Halls' attorney noting that he had not heard anything since his April 10 letter and presumed the Halls' "position remains unchanged and that they dispute [Calyx's] right to drill and are not interested in negotiating a surface damage settlement." Nonetheless, the letter concluded with an offer to meet at the Halls' convenience in an attempt to settle the surface damage issue. Further, in an offer of proof, Calyx referred to testimony by Mrs. Hall to the effect that the Halls were not willing to accept compensation from Calyx for an agreement to drill on their property. 
¶24 Second, during the January 4, 2011, hearing on the Halls' request for treble damages, the district court announced its view that failure to negotiate was a defense the surface owner could interpose when the operator filed a petition for the appointment of appraisers before the operator began drilling operations, but not a basis on which treble damages could be awarded. The district court's view is supported by section 318.5(A):


Prior to entering the site with heavy equipment, the operator shall negotiate with the surface owner for the payment of any damages which may be caused by the drilling operation. If the parties agree, and a written contract is signed, the operator may enter the site to drill. If agreement is not reached . . . the operator shall petition the district court in the county in which the drilling site is located for appointment of appraisers to make recommendations to the parties and to the court concerning the amount of damages, if any. Once the operator has petitioned for appointment of appraisers, the operator may enter the site to drill. 


Compliance with section 318.5(A) is not an issue in this case. Prior to filing its petition on April 21, 2008, Calyx attempted to negotiate with the Halls. When those negotiations failed, Calyx did not enter the Halls' property until May 16, 2008, after filing its petition. 
¶25 The district court also relied on Tower Oil & Gas Company, Inc. v. Harmon, 1989 OK 127, 782 P.2d 1355. The Harmon Court reversed a treble damages award, in part, because "section 318.9 does not provide that the failure to negotiate in good faith is a proper ground for award of treble damages."[5] The Halls contend the Supreme Court's statement about the failure to negotiate in good faith as a basis for treble damages is dicta because the treble damage award in Harmon had not been entered in the separate proceeding required by section 318.9. We find the Halls' argument unpersuasive. The Court stated two grounds for reversing the treble damage award, the failure to conduct a separate hearing and the reliance on section 318.9 as a basis for awarding treble damages. Consequently, section 318.9 does not authorize the imposition of treble damages for an operator's failure to negotiate in good faith.
¶26 Section 318.9 does authorize treble damages for an operator's failure to notify the surface owner or obtain the surface owner's agreement before entering the property. However, the surface owner must provide "clear, cogent and convincing evidence that the operator willfully and knowingly" did so. The Halls admit that Calyx notified them before it entered their property. Consequently, Calyx satisfied its obligation pursuant to the first sentence of section 318.9, and treble damages cannot be imposed on this basis. What additional evidence the Halls contend was improperly excluded by the district court is unclear. Nonetheless, to demonstrate error by the district court it was the Halls' "burden to offer evidence at the hearing which supported [their] position, and, if excluded, to make an offer of proof." Fleck v. Fleck, 2004 OK 39, ¶ 13, 99 P.3d 238, 241. The Halls did neither. In the absence of such evidence, this Court presumes the district court did not err. See Hamid v. Sew Original, 1982 OK 46, 645 P.2d 496. 
CONCLUSION
¶27 A surface owner's contractual obligation to an attorney is not the sole determinant in awarding attorney fees pursuant to 52 O.S.2011 § 318.5(F). Attorney fees awarded pursuant to that statute must be reasonable. The district court's January 3, 2011, attorney fee order is affirmed as modified to correct a mathematical error. Pursuant to that order, the Halls are entitled to $43,375.00 in attorney fees and $5,843.40 in costs for a total of $51,218.40. 
¶28 The Halls are not entitled to attorney fees for litigating the treble damages aspect of their surface damages claim. Title 52 O.S.2011 § 318.5(F) does not authorize an award of attorney fees with respect to the separate proceeding the district court is statutorily required to conduct with respect to treble damages issues. Consequently, the district court's March 6, 2011 order is affirmed. 
¶29 Likewise, the court's January 31, 2011, location damage bond order is affirmed. After our de novo review, we agree with the district court. The Halls failed to prove that Calyx willfully and knowingly failed to post the location damage bond. 
¶30 Finally, failure to negotiate in good faith is not a basis on which treble damages can be awarded pursuant to 52 O.S.2011 § 318.9. The Halls concede that they were notified before Calyx entered their property. As a result, Calyx satisfied its obligation imposed by the first sentence of section 318.9. Consequently, the district court's December 28, 2011, order is affirmed. 
¶31 AFFIRMED AS MODIFIED. 
RAPP, J., and THORNBRUGH, J., concur.
FOOTNOTES
[1] For convenience, this Opinion will cite to the 2011 version of the Surface Damages Act rather than the version of the Act in effect when the facts in this case occurred because the provisions of the Act have not been amended since the Act was adopted in 1982, or any amendments are not applicable or material to the issues in this appeal. 
[2] The record on appeal in Calyx I was filed on February 6, 2012. Neither party sought to supplement that record with the subsequent judgment on the Halls' tort claim or otherwise call that fact to this Court's attention after the Opinion in Calyx I was issued. 
[3] Even if we were to apply general prevailing party law, the Halls' argument would fail. When possible, the district court must distinguish between compensable and non-compensable attorney time and effort. See Green Bay Packaging, Inc. v. Preferred Packaging, Inc., 1996 OK 121, ¶ 38, 932 P.2d 1091, 1098. Here, that distinction can be clearly made both temporally and substantively. The damage to the Halls' property caused by Calyx's drilling operations was tried to the jury in a separate proceeding and concerned issues separate from the treble damages issues. At issue in the treble damages hearing was whether Calyx provided the required bond and notice prior to entering the Halls' land. These acts preceded the damage caused by Calyx's subsequent drilling operations to the surface of the Halls' property and for which the Halls recovered the June 16, 2010, judgment. The issues in the two proceedings are not so intertwined that they could not be segregated. See Silver Creek Invests., Inc. v. Whitten Constr. Mgmt., Inc., 2013 OK CIV APP 49, ¶ 14, 307 P.3d 360, 366. Litigation of the treble damage issues on which the Halls did not prevail would be properly segregated from the surface damage issues on which the Halls did prevail. 
[4] In Calyx I, this Court held that the January 31, 2011, order only resolved the location bond issue but not the notice and negotiation issue. In its petition in error and cross-petition in error, Calyx contends that this Court "did not realize that the trial court's order of January 31, 2011, denied the treble damages claim on all legal theories" and "mistakenly understood that trial court had not completely resolved the treble damage issue" in its January 31, 2011, order when Calyx I was decided. Calyx did not supplement the appellate record in Calyx I to show that the notice and negotiation issue had been resolved, nor did Calyx file a petition for rehearing of the Calyx I decision to argue that the notice and negotiation issue had already been decided. This Court's determination in Calyx I that the notice and negotiation issue had not yet been resolved is the "law of this case." The settled-law-of-the-case doctrine bars relitigation of issues that have been settled by a previous appellate opinion in the same case. Panama Processes, S.A. v. Cities Serv. Co., 1990 OK 66, n.27, 796 P.2d 276, 283 n.27. Generally, all issues resolved by an appellate decision either expressly or impliedly become the law of the case and are not subject to review in a subsequent appeal. Fent v. Oklahoma Natural Gas Co., 1995 OK 108 , ¶ 13, 898 P.2d 126, 133. Shoemaker v. Estate of Freeman, 1998 OK 17, ¶ 15, 967 P.2d 871, 875. The holding in Calyx I is binding on Calyx. 
[5] Failure to give statutory notice as the sole basis for an award of treble damages was not addressed in Harmon and is not raised as an issue in this appeal.




 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 1991 OK CIV APP 55, 812 P.2d 1378, 62 OBJ 2466, Samson Resources Co. v. Cloud
Discussed
 2006 OK CIV APP 71, 136 P.3d 718, STATE ex rel. DEPT. OF TRANSPORTATION
Discussed
 2007 OK CIV APP 107, 172 P.3d 225, STATE ex rel. DEPT. OF TRANSPORTATION v. DOWNEY
Discussed
 2013 OK CIV APP 4, 295 P.3d 30, CALYX ENERGY, LLC v. HALL
Discussed at Length
 2013 OK CIV APP 49, 307 P.3d 360, SILVER CREEK INVESTMENTS, INC. v. WHITTEN CONSTRUCTION MANAGEMENT, INC.
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1989 OK 51, 771 P.2d 1006, 60 OBJ 900, Dyco Petroleum Corp. v. Smith
Discussed
 1989 OK 78, 773 P.2d 1265, 60 OBJ 1383, Andress v. Bowlby
Discussed at Length
 1989 OK 104, 776 P.2d 1277, 60 OBJ 1726, Tower Oil & Gas Co., Inc. v. Keeler
Discussed
 1989 OK 127, 782 P.2d 1355, 60 OBJ 2371, Tower Oil & Gas Co., Inc. v. Harmon
Discussed at Length
 1990 OK 66, 796 P.2d 276, 61 OBJ 1934, Panama Processes, S.A. v. Cities Service Co.
Discussed
 1992 OK 31, 829 P.2d 15, 63 OBJ 682, TRW/Reda Pump v. Brewington
Discussed
 1993 OK 23, 848 P.2d 1166, 64 OBJ 820, Maxwell v. Samson Resources Co.
Discussed
 1993 OK 166, 867 P.2d 451, 65 OBJ 23, Houck v. Hold Oil Corp.
Discussed at Length
 1994 OK 9, 870 P.2d 762, 65 OBJ 283, Oklahoma Turnpike Authority v. New Life Pentecostal Church of Jenks
Discussed
 1994 OK 108, 898 P.2d 126, 65 OBJ 3215, Fent v. Oklahoma Natural Gas Co.
Cited
 1956 OK 221, 301 P.2d 212, STEMMONS, INC. v. UNIVERSAL C.I.T. CREDIT CORP.
Discussed
 1995 OK 108, 905 P.2d 778, 66 OBJ 3281, Hayes v. Eateries, Inc.
Cited
 2003 OK 11, 64 P.3d 1113, WARD PETROLEUM CORP. v. STEWART
Discussed
 2003 OK 35, 67 P.3d 339, FINNELL v. JEBCO SEISMIC
Discussed
 2003 OK 72, 77 P.3d 1042, TIBBETTS v. SIGHT 'n SOUND APPLIANCE CENTERS, INC.
Discussed
 2004 OK 39, 99 P.3d 238, FLECK v. FLECK
Discussed
 2005 OK 27, 130 P.3d 213, YOCUM v. GREENBRIAR NURSING HOME
Discussed
 2006 OK 32, 136 P.3d 656, YDF, INC. v. SCHLUMAR, INC.
Cited
 2007 OK 5, 152 P.3d 880, BOSTON AVENUE MANAGEMENT, INC. v. ASSOCIATED RESOURCES, INC.
Discussed
 1996 OK 121, 932 P.2d 1091, 67 OBJ 3291, Green Bay Packaging, Inc. v. Preferred Packaging, Inc.
Discussed
 2010 OK 39, 236 P.3d 116, IN THE MATTER OF THE ADOPTION OF BABY BOY A
Discussed
 1980 OK 93, 613 P.2d 473, Commercial Communications, Inc. v. State ex rel. Oklahoma Bd. of Public Affairs
Discussed
 1979 OK 115, 598 P.2d 659, STATE EX REL. BURK v. CITY OF OKLAHOMA CITY
Discussed
 1982 OK 46, 645 P.2d 496, Hamid v. Sew Original
Discussed
 1998 OK 17, 967 P.2d 871, 69 OBJ 850, SHOEMAKER v. ESTATE OF FREEMAN
Discussed
 1998 OK 130, 977 P.2d 357, 70 OBJ 59, Morgan v. Galilean Health Enterprises, Inc.
Discussed
 1985 OK 8, 699 P.2d 1083, Root v. Kamo Elec. Co-op., Inc.
Discussed
Title 17. Corporation Commission
 Cite
Name
Level

 17 O.S. 518, Agreement in Writing to Comply with Rules and Regulations - Requirements to Establish Evidence of Financial Ability - Neglect, Failure or Refusal to Plug and Abandon or Replug Well - Forfeiture or Payment - Transfer of Title
Cited
Title 27. Eminent Domain
 Cite
Name
Level

 27 O.S. 11, Reimbursement of Expenses when Property not Acquired
Cited
Title 52. Oil and Gas
 Cite
Name
Level

 52 O.S. 318.2, Definitions
Cited
 52 O.S. 318.3, Notice of Intent to Drill - Negotiating Surface Damages
Cited
 52 O.S. 318.4, Bond or Letter of Credit
Cited
 52 O.S. 318.5, Negotiating Surface Damages - Appraisers - Report and Exceptions Thereto - Jury Trial
Discussed at Length
 52 O.S. 318.9, Violation of Act - Damages
Discussed at Length
Title 66. Railroads
 Cite
Name
Level

 66 O.S. 54, Taking by Eminent Domain - Owner Entitled to Compensation, When
Discussed
 66 O.S. 55, Review of Commissioner's Report - Jury Trial - Notice - Costs
Discussed at Length